# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| PERFORMANCEPARTNERS, LLC, | |
| *Plaintiff*, | Case No. 6:23-CV-130-KC |
| v. | |
| FLASHPARKING, INC., | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

### FLASHPARKING INC.'S OPENING BRIEF IN SUPPORT OF ITS
### RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES ........................................................................................... v

I.     INTRODUCTION .......................................................................................... 1

II.    STATEMENT OF RELEVANT FACTS ......................................................... 1

III.   LEGAL STANDARD..................................................................................... 4

IV.    ARGUMENT ................................................................................................. 5

       A.     Claim 8 of the '435 Patent is Representative of all Claims .....................5

       B.     *Alice* Step 1: Claim 8 of the '435 Patent is Directed to the Abstract Idea of
              Monitoring and Controlling Vehicle Access ...........................................7

       C.     *Alice* Step 2: Claim 8 Contains no Inventive Concept Sufficient to Transform
              the Abstract Idea into Patent-Eligible Subject Matter ...........................12

       D.     There are no Claim Construction Issues or Factual Disputes Preventing the
              Court from Ruling at the Rule 12 Stage.................................................14

V.     CONCLUSION............................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ................................................................. *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
    841 F.3d 1288 (Fed. Cir. 2016) ...............................................................6, 13

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
    687 F.3d 1266 (Fed. Cir. 2012) ...............................................................5, 13

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ...............................................................13

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ...............................................................15

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ...............................................................4

*BSG Tech LLC v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018) ...............................................................12

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014) ...............................................................12, 13

*ChargePoint, Inc. v. SemaConnect, Inc.,*
    *920 F.3d 759 (Fed. Cir. 2019)* ...............................................................12

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014) ...............................................................5, 13

*Contiguity, LLC v. Conduent Business Services, LLC,*
    6:23-cv-00038, Dkt. 27 (W.D. Tex., May 12, 2023) (Rodriguez, J.) .................7, 10

*Customedia Techs., LLC v. Dish Network Corp.,*
    951 F.3d 1359 (Fed. Cir. 2020) ...............................................................12

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ...............................................................4, 8

*Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees,*
    855 F.3d 681 (5th Cir. 2017) ...............................................................4

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ...................................................................14

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016).......................................................................13

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016).......................................................................11

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016).........................................................................9

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) .........................................................................8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012).......................................................................................8

*People.ai, Inc. v. Clari Inc.*,
    Nos. 2022-1364, 2022-1366, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ........8, 10

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ..............5

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
    No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019)...........5, 7

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).........................................................................7

*Simio, LLC v. Flexsim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020).......................................................................14

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016).........................................................................8

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)......................................4

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019).....................................................................9, 10

*Yanbin Yu, et al. v. Apple Inc. et al*,
    Case Nos. 2020-1760, 2020-1803 (Fed. Cir. June 11, 2021)...........................13

**Federal Statutes**

35 U.S.C. § 101 ........................................................................................ *passim*

**Miscellaneous**

Fed. R. Civ. P. 12.........................................................................................................14, 15

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 4, 14

## STATEMENT OF ISSUES

1.      A district court may address the patent eligibility of all claims of a patent via a single representative claim when the differences between the representative claim and those it represents are immaterial with respect to the eligibility analysis. Claim 8 of U.S. Patent No. 7,525,435 contains all material limitations included in all claims of the '435 Patent with respect to the eligibility analysis. Is Claim 8 therefore representative of all claims of the '435 Patent?

2.      Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the asserted '435 Patent are directed to the abstract idea of monitoring and controlling vehicular access to an area, and they implement this idea via generic computer technology used for its conventional purposes. Should the claims of the '435 Patent therefore be found invalid for failure to claim eligible subject matter under 35 U.S.C. § 101?

## I.     INTRODUCTION

On February 17, 2023, PerformancePartners, LLC filed this lawsuit accusing FlashParking, Inc.'s FlashVision parking system of infringing Claim 8 of the '435 Patent. (*See* Dkt. 1 ("Compl.") at ¶¶ 30, 34). On March 1, 2023, PerformancePartners filed a First Amended Complaint. (*See* Dkt. 5 ("Amd. Compl.") at ¶ 34.) The claims of the '435 Patent, however, are invalid for failure to claim patent eligible subject matter under 35 U.S.C. § 101.

As detailed below, the claims of the '435 Patent are directed to monitoring vehicle access points and controlling vehicle entry and exit from those access points. But monitoring and controlling vehicle access, absent something more, is an abstract idea that is ineligible for patent protection under § 101. Here, there is nothing more. The '435 Patent does not purport to utilize novel technology or combine conventional technology in novel ways. The claims do not improve the functioning of any computer component. The '435 Patent does not even purport to be the first computerized system for monitoring and controlling vehicle access. Rather, the '435 Patent's claims simply take the idea of monitoring and controlling vehicle access—an act that humans have long performed—and automate it using generic technology. That is insufficient to confer patent eligibility.

Resolving the issue of the '435 Patent's eligibility does not require fact discovery or claim construction. PerformancePartners's factual allegations, even when presumed true, do not preclude dismissal. Therefore, to avoid wasting judicial and party resources unnecessarily litigating invalid patents, FlashParking requests that the Court dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## II.    STATEMENT OF RELEVANT FACTS

The '435 Patent explains that the patent's purported "invention most generally relates to a system for protecting, controlling and securing a region entered and exited by vehicles." '435

Patent at 2:25-27. To accomplish the function of monitoring and controlling vehicle access, the '435 Patent relies on generic technology functioning in conventional manners.

For example, the '435 Patent's specification explains that the invention makes use of "sensing devices" to detect vehicle ingress and egress, but does not purport to invent a new type of sensor and is ultimately agnostic to what type of sensing device is used. *Id.* at 2:64-3:2 ("there may be variations in the information sensing devices. . .") These sensing devices identify "vehicle characteristics," which the '435 Patent admits could be any "structural, physical, color, manufacturer, model, year, license tag, VIN and/or other discrete physical characteristics associated with the particular entering vehicle. . ." *Id.* at 7:21-25. The '435 Patent utilizes a security system to monitor or track vehicle access, but again, it provides no novel technology or limiting details. *Id.* at 5:54-56 ("A security monitoring/tracking system is provided which may be in the form of a computer and/or processor or a similarly functional system of components.") To perform the vehicle validation function, the '435 Patent describes matching the information captured from the "sensing device" with that stored in the "security system," but it is again indifferent to the manner in which it is carried out. *Id.* at 4:26-31 ("any type and making comparisons and matching or confirmations of a vehicle with stored data") To perform the function of allowing vehicles to enter and exit the monitored area, the '435 Patent discloses only a "gate or similar" means. *See, e.g., id.* at 7:66. Indeed, the '435 Patent later acknowledges that all of the claimed components are known and conventional. *Id.* at 9:41-45 ("There currently exists a broad array of features and variations in the available sensing devices, devices for creating identity codes, ticket/tag production methods, as well as system recognition of acceptance criteria at vehicle entry and/or exit.")

The claims are even more generic. The '435 Patent consists of 20 claims, three of which are independent: 1, 8, and 15.[1] Claim 8 recites a method for monitoring and controlling vehicle access that consists of the functionally recited steps of (1) monitoring access points, (2) obtaining ingressing vehicle information, (3) providing said vehicle with a ticket or code, (4) obtaining egressing vehicle information, (5) comparing the ingress and egress information, and then (6) either permitting egress if the information matches or providing an alternative option if it does not.

| Claim 8 | Step |
|---|---|
| **8**. A method for managing entering and exiting of vehicles, said method comprising the steps of: | |
| monitoring points of access to an area so as to detect entering and exiting vehicles; | **1) Monitor access points** |
| obtaining from each said entering vehicle, entering vehicle identification information comprising at least one electronically readable unique repeatable distinguishing characteristic of said entering vehicle and storing said entering vehicle information in an information management system; | **2) Obtain entering vehicle info** |
| offering said entering vehicle a security option comprising: (i) creating a unique random code and associating said random code with said entering vehicle identification information in said information management system; (ii) forming a Ticket/Tag incorporating said unique random code; and (iii) providing said Ticket/Tag to an agent of said entering vehicle for later identification of said entering vehicle; | **3) Offer a ticket or code** |
| obtaining from each said exiting vehicle, exiting vehicle identification information comprising said unique repeatable distinguishing characteristic of said exiting vehicle; | **4) Obtain exiting vehicle info** |
| comparing the respective said exiting vehicle identification information with the stored said entering vehicle identification information in said information management system for matching information whereby vehicle identification is confirmed; | **5) Compare entering and exiting info** |
| permitting exiting vehicles with said matching information to exit; and subjecting exiting vehicles without said matching information to a resolution process. | **6) Permit exit or not** |

---

[1] For reasons discussed in § V.A., Claim 8 is representative of all claims for the purposes of the § 101 analysis.

### III.    LEGAL STANDARD

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). If a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim of relief that is plausible on its face and fails to raise a right to relief above the speculative level." *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 685 (5th Cir. 2017). Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu*, *LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct

4

a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

## IV.    ARGUMENT

As a threshold matter, the issue of § 101 validity can be evaluated from the perspective of Claim 8 of the '435 Patent because it is representative of all claims. That analysis reveals that the claims of the '435 Patent are invalid under § 101 because they fail both prongs of the *Alice* test: the claims are directed to the abstract idea of monitoring and controlling vehicle access and do not contain an "inventive concept sufficient to ensure that the patents in practice amount to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355. Finally, no factual disputes or claim construction issues preclude the Court's determination at the 12(b)(6) stage.

### A.    Claim 8 of the '435 Patent is Representative of all Claims

Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in the § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Such is the case here. For the reasons that follow, Claim 8 of the '435 Patent is representative of all '435 Patent claims. *See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea"); *see also Alice*, 573 U.S. at 224-26 (invalidating over 200 claims across four patents based on two representative claims).

All independent claims of the '435 Patent are directed to the same abstract idea of monitoring and controlling vehicle access. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No.

2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis). Claim 8 recites a method for monitoring and controlling vehicle access consisting of six basic steps: (1) monitoring access points, (2) obtaining entering vehicle information, (3) providing said vehicle with a ticket or code, (4) obtaining existing vehicle information, (5) comparing the entering and exiting information, and then (6) either permitting exit if the information matches or providing an alternative option if it does not. Likewise, claims 1 and 15 are method claims that recite the same abstract idea of monitoring and controlling vehicle access featuring the same six steps. *See* Ex. 1 (side-by-side comparison of independent claims 1, 8, and 15 with differences highlighted). As is clear from the comparison, Claim 1 is nearly identical to Claim 8 but for substituting the term "onboard-identity/signature" with "distinguishing characteristic." (*Id.*) Claim 15 contains two immaterial differences: it refers to a "vehicle" as a "mobile entity" and adds an element that the random code be decoded prior to the comparison step. (*Id.*) Clearly, none of these changes fundamentally alters the nature of the claims or the fact that they are directed to the same abstract idea.

Nor do the remaining dependent claims of the '435 Patent alter the eligibility analysis. Rather, they simply recite token post-solution limitations or elements performed by computing elements that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359; *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1311 (Fed. Cir. 2016) ("It is therefore well established that 'limiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable.'") (citing *Bilski*, 561 U.S. at 612). For example:

- **Claims 2, 9, 18, 19**: These claims discuss the handling of the "Ticket/Tag." For example, Claims 2 and 9 recite that the "unique random code" is encrypted and

must be decoded by the ticket agent prior to comparison. *See* '435 Patent at Cls. 2, 9. Claims 18 and 19 merely recite sealing the Ticket/Tag or providing the Ticket/Tag to the vehicle agent. *Id.* at Cls. 18, 19.

- **Claims 3, 4, 5, 10, 11, 12, 17**: These claims recite additional data that is added to the "Ticket/Tag"—specifically, arrival and/or departure times—and comparing vehicle arrival and/or departure times. *Id.* at Cls. 3-5, 10-12, 17.

- **Claims 6, 13**: These claims include optically scanning the entering and exiting vehicles. *Id.* at Cls. 6, 13.

- **Claims 7, 14, 16**: These claims describe that the types of vehicle identification information may include "manufacturer, model, year, VIN, color, size, shape and registration/license tag data," an "on-board identity/signature," or a "unique tracking number." '435 Patent at Cls. 7, 14, 16.

- **Claim 20**: This claim merely recites that the information gathered is exchanged with "other information management systems." '435 Patent at Cl. 20.

Accordingly, Claim 8 of the '435 Patent is representative of all claims for the § 101 analysis. *See PPS Data*, 2019 WL 1317286, at *5.

**B.    *Alice* Step 1: Claim 8 of the '435 Patent is Directed to the Abstract Idea of Monitoring and Controlling Vehicle Access**

Claim 8 of the '435 Patent is directed to an unpatentable abstract idea because it claims nothing more than the concept of monitoring and controlling vehicle access "and merely mechanizes concepts capable of resolution by the human brain." *Contiguity, LLC v. Conduent Business Services, LLC*, 6:23-cv-00038, Dkt. 27 (W.D. Tex., May 12, 2023) (Rodriguez, J.) (granting § 101 motion to dismiss). In assessing whether a claim is directed to an abstract idea, courts begin by analyzing the "focus" of the claim, *i.e.*, its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Here, the focus of Claim 8 is to simply **automate** the process of monitoring and controlling vehicle access.

It cannot be disputed that monitoring and controlling vehicle access is a process humans carried out years prior to the '435 Patent's August 2005 priority date. It has long been routine to observe valets or security personnel monitoring and controlling vehicle access to restricted areas,

such as "private, government, or military facility[ies] or base[s]." *See* '435 Patent at 5:4-6. It has equally long been common for human attendants to record a license plate number or other vehicle characteristics and to provide the owner with a ticket (which could include a random barcode) associated with the vehicle that permits entry and exit from a parking location. The '435 Patent attempts to claim an automated version of this process. It is axiomatic, however, that "[a]utomation or digitization of a conventional method of organizing human activity . . . does not bring the [*19] claims out of the realm of abstractness." *People.ai, Inc. v. Clari Inc.,* Nos. 2022-1364, 2022-1366, 2023 WL 2820794, at *7 (Fed. Cir. Apr. 7, 2023); *see also Gottschalk*, 409 U.S. 63, 67; *CyberSource*, 654 F.3d at 1373; *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146-47 (Fed. Cir. 2016) (reaffirming this mental process doctrine after *Alice* and *Mayo*).

The Federal Circuit has repeatedly affirmed that similar claims were directed to unpatentable abstract ideas. For example, in *In re Killian* the Federal Circuit held that claims directed to an automated "system and method 'for determining eligibility for Social Security Disability Insurance [SSDI] benefits through a computer network'" were ineligible. *In re Killian*, 45 F.4th 1373, 1379 (Fed. Cir. 2022). There, the patent disclosed that the "'the automated system seamlessly carries out the process of determining who is eligible . . . which frees up assigned staff to perform more traditional duties.'" *Id.* The court affirmed that the claims failed step one of *Alice* because the claims were "directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating in its normal, expected manner." *Id.* at 1381. Similarly, Claim 8 of the '435 Patent merely recites the automation of monitoring and controlling vehicle access, which is a process of "making determinations and identifications, which are mental tasks humans routinely do." *Id.* at 1379 (internal quotations omitted). Collecting vehicle information to determine who may enter or exit

is a mental process that has been carried out by humans since long before the priority date of the '435 Patent.

As another example, the Federal Circuit affirmed that claims directed to "collect[ing] information regarding access of a patient's personal health information, analyzes the information according to one of several rules . . . to determine if the activity indicates improper access, and provides notification if it determines that improper access has occurred" were ineligible. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016). The court held that the claims were "directed to collecting and analyzing information to detect misuse and notifying a user when misuse is detected." *Id.* at 1094. The court emphasized that "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category. *Id.* at 1093 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)). Claim 8 of the '435 Patent is no different. It collects data to make a determination whether a vehicle is permitted to enter or exit an area. That Claim 8 generates a unique random code and associates that code with a particular vehicle still falls within the abstract-idea category of "mental processes." *Id.* at 1093.

Even when automation can "result in life altering consequences," this "does not render it any less abstract." *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019). The Federal Circuit held ineligible a patent that integrated physiologic data using a bedside device, converted the received data streams, and conveyed the data for display. *Id.* at 1366. The court determined that "[o]n its face, the [patent] seeks to automate 'pen and paper methodologies' to conserve human resources and minimize errors." *Id.* at 1367. Furthermore, the court held that the patent failed "to provide any technical details for the tangible components" and that the system was described in "purely functional terms." *Id.* at 1368. Claim 8 of the '435 Patent

suffers from the same deficiencies. It effectively claims the benefits of automation while disclosing the method in purely functional terms and without providing any details regarding the tangible components. In essence, it is claiming the benefits of automation while only disclosing an "information management system." '435 Patent, Cl. 8. This is not sufficient for patent eligibility. *Univ. of Fla. Rsch. Found., Inc.*, 916 F.3d at 1367; *see also People.ai, Inc. v. Clari Inc.*, No. 2022-1364, 2023 WL 2820794, at *8 (Fed. Cir. Apr. 7, 2023) (non-precedential) ("That the claimed automation leads to expected improvements in speed accuracy, and completeness is laudable, but as we explained in *University of Florida Research Foundation*, the inherent benefits of automation 'do [] not render it any less abstract.'").

Courts in this District have also found similar patents to be abstract and ineligible. In *Contiguity*, Judge Rodriguez addressed a patent directed to monitoring vehicle speeds using devices "placed at several geographic locations along a single route, such as a highway." *Contiguity*, 6:23-cv-00038-XR, Dkt. 27 at 1. The claimed devices monitored vehicles by taking images at each station and comparing the timestamps of the images. *Id.* Judge Rodriguez found that the patent merely "collects information (images of a vehicle), analyzes it (compares to images to calculate speed), and displays results (whether or not the vehicle exceeded the speed limit)." *Id.* at 6-7. Plaintiff's rebuttal that the patent was the "first of its kind to use imaging to detect speeding infractions" was not persuasive. *Id.* at Claim 8 of the '435 Patent follows the same pattern. It collects information (vehicle identification information), analyzes it (compares the vehicle identification information against a database), and displays results (whether the vehicle is permitted entry and/or exit). Any remaining steps are superfluous and do not deviate from processing information and reaching a result.

Claim 8 is unlike those that have been found eligible at *Alice* step 1 for their ability to improve the functioning of computers. In *Enfish*, for example, a claim that recited "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory" was found non-abstract because it improved the way computers operated and handled data, allowing for more efficient database functions. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). PerformancePartners's Amended Complaint invokes a comparison to *Enfish* by alleging that the '435 Patent "represent technological improvements to the operation of computers as tools of trade (Amd. Compl., ¶ 19.) As "evidence" supporting this statement, however, PerformancePartners points not to the claim language but rather a sequence of generic functional steps carried out by a computer:

    (i)      protecting, controlling and securing a region entered and exited by vehicles;

    (ii)     identifying, relating, rejecting or accepting an entering vehicle as a vehicle with no potential problem as the vehicle enters into a protected or protectable area or region;

    (iii)    providing means and method for obtaining vehicle identification information for an exiting vehicle and comparing such exiting vehicle identification with the vehicle identification of entering vehicles for a matching review of stored data thereby allowing exit of the vehicle based upon the finding of a matching identification, or not allowing the exit of the vehicle if no matching is found in the stored data base;

    (iv)    providing means and methods for comparison and review of the obtained identification information of the entering vehicle with stored information; and

    (v)     creating a suitable "characteristics identity" for a given vehicle by detection of select characteristics of the vehicle such as, for example, the license plate characters.

(*Id*.) But nothing in these steps generally or in the language of Claim 8 specifically improves the functioning of computers. Claim 8 is devoid of any explanation as to how it would improve the functioning of existing systems or components from a technical standpoint. *See TLI Commc'ns*,

823 F.3d at 615; *see also buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1355 (Fed. Cir. 2014). Rather, it simply invokes computers as a tool to carry out the abstract idea of monitoring and controlling vehicle access, which is insufficient to confer patent eligibility. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020). ("[I]t is not enough, however, to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool.")

Claim 8 claims the abstract idea of automating the process of monitoring and controlling vehicle access. Claim 8 thus fails *Alice* step one. *See Alice*, 134 S. Ct. at 2355.

## C.  *Alice* Step 2: Claim 8 Contains no Inventive Concept Sufficient to Transform the Abstract Idea into Patent-Eligible Subject Matter

Claim 8 of the '435 Patent also fails step two of *Alice* because it does not contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).

Such is the case here: Claim 8 recites a series of functional steps facilitated by an "information management system." The specification confirms that each of the functional steps is to be carried about by generic computer hardware and software operating in their conventional fashion. *See* § II, *supra*. Claim 8 is, in other words, "simply an abstract-idea-based solution implemented with generic technical components in a conventional way." *ChargePoint, Inc. v. SemaConnect, Inc., 920 F.3d 759, 775 (Fed. Cir. 2019).* Merely applying the abstract idea of monitoring and controlling vehicle access using conventional and well-understood techniques "[a]s a matter of law . . . does not add 'significantly more[.]'" *BSG Tech*, 899 F.3d at 1290-91.

Courts routinely hold that use of generic computer hardware and software does not make an otherwise abstract idea patent eligible. *See, e.g., buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1355 (Fed. Cir. 2014). ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canad*a (U.S.), 687 F.3d 1266, 1278 (Fed. Cir. 2012). Put another way, there is "[n]othing in the claims" that "requires anything other than off-the-shelf, conventional computer . . . technology" to carry out the abstract idea. *Elec. Power Grp*., 830 F.3d at 1355; *Yanbin Yu, et al. v. Apple Inc. et al*, Case Nos. 2020-1760, 2020-1803, at 9-10 (Fed. Cir. June 11, 2021) ("[T]he claimed hardware configuration itself is not an advance and does not itself produce the asserted advance of enhancement . . . which . . . is an abstract idea. The claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement—the generic hardware limitations of claim 1 merely serve as a conduit for the abstract idea.")

Claim 8 is also readily distinguishable from those determined to be patent eligible at *Alice* step 2. In *Amdocs*, for example, the Federal Circuit held that the claimed invention was patentable, because, while the elements individually required "arguably generic components," they involved an "unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)" and "depend[ed] upon the invention's unique distributed architecture." *Amdocs (Israel) Ltd. v. Openet Telecom*, Inc., 841 F.3d 1288, 1300-03 (Fed. Cir. 2016); *see also BASCOM Glob. Internet Servs.,*

*Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (holding that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces" to provide a technology-based solution). Claim 8 of the '435 Patent, in contrast, recites no unique or non-conventional combination of elements.[2] With no inventive concept beyond the abstract idea of monitoring and controlling vehicle access, the '435 Patent fails both prongs of the *Alice* inquiry.

### D.   There are no Claim Construction Issues or Factual Disputes Preventing the Court from Ruling at the Rule 12 Stage

The issue of patent eligibility is ripe for the Court's consideration because there are no claim construction issues precluding resolution at the Rule 12 stage. No matter how the Court construes any term of Claim 8 of the '435 Patent, it remains focused exclusively on, and ultimately directed to, the abstract idea of monitoring and controlling vehicle access.

There are also no factual disputes on this record precluding resolution on the pleadings. As an initial matter, the Court need not credit the conclusory allegations in PerformancePartners's Amended Complaint. *See Simio*, 983 F.3d at 1365 ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). PerformancePartners's "allegation[s] about inventiveness, wholly divorced from the claims or the specification, do[] not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

---

[2] The Amended Complaint's conclusory allegations that "the specific combinations and steps . . . were not conventional or routine as of the Date of the Invention" (*see* Amd. Compl., ¶ 17) are insufficient to confer eligibility. *See Simio, LLC v. Flexsim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

This case is thus unlike *Berkheimer* where the Federal Circuit found Rule 12 to be inappropriate. In *Berkheimer*, the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court noted that "[t]he improvements in the specification, **to the extent they are captured in the claims**, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* (emphasis added). No such inventive feature in described in the specification of the '435 Patent, much less captured in claim 8. Accordingly, this issue is ripe for the Court's consideration at the Rule 12 stage.

## V.    CONCLUSION

For the foregoing reasons, FlashParking respectfully requests that the Court dismiss PerformancePartners' Amended Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, FlashParking requests dismissal with prejudice.

Dated: June 7, 2023

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Michael R. Ellis*
     Neil J. McNabnay
     Texas Bar No. 24002583
     Ricardo Bonilla
     Texas Bar No. 24082704
     Michael R. Ellis
     Texas Bar No. 24102726
     Sarika Patel
     Texas Bar No. 24073520
     1717 Main Street, Suite 5000
     Dallas, Texas 75201
     (214) 747-5070 (Telephone)
     (214) 747-2091 (Facsimile)
     mcnabnay@fr.com
     bonilla@fr.com
     ellis@fr.com
     patel@fr.com

     ***Attorneys for Defendant***
     ***FlashParking, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 7, 2023, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system on.

     */s/ Michael R. Ellis*
     Michael R. Ellis