IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PERFORMANCEPARTNERS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. WA-23-CV-130-KC |
| | § | |
| FLASHPARKING, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Defendant's Motion to Dismiss for Failure to State a Claim ("Motion"), ECF No. 10.  For the reasons set forth below, the Motion is **GRANTED** and Defendant's counterclaims, ECF No. 12, are **DISMISSED** as moot.

## I.      BACKGROUND

This case involves Plaintiff PerformancePartners' allegation that Defendant FlashParking infringed one of Plaintiff's patents, U.S. Patent No. 7,525,435.  *See* 1st Am. Compl. ("Compl.") ¶ 31–47, ECF No. 5; *see also* Method, Apparatus, and System for Securing Areas of Use of Vehicles, U.S. Patent No. 7,525,435 (provisional application filed Aug. 2, 2005).  The '435 Patent claims three independent methods of using technology to identify and manage vehicles that attempt to access parking areas.  *See generally* '435 Patent (Claims 1, 8, and 15).  It also claims seventeen dependent claims that either explain or supplement the independent claims.  *Id.* (Claims 2–7, 9–14, and 16–20).

Plaintiff alleges Defendant has infringed Claim 8 of the '435 Patent.  1st Am. Compl. ¶ 34.  In its entirety, Claim 8 sets forth:

A method for managing entering and exiting of vehicles, said method comprising the steps of:

monitoring points of access to an area so as to detect entering and exiting vehicles;

obtaining from each said entering vehicle, entering vehicle identification information comprising at least one electronically readable unique repeatable distinguishing characteristic of said entering vehicle and storing said entering vehicle information in an information management system;

offering said entering vehicle a security option comprising:

(i)     creating a unique random code and associating said random code with said entering vehicle identification information in said information management system;

(ii)    forming a Ticket/Tag incorporating said unique random code; and

(iii)   providing said Ticket/Tag to an agent of said entering vehicle for later identification of said entering vehicle;

obtaining from each said exiting vehicle, exiting vehicle identification information comprising said unique repeatable distinguishing characteristic of said exiting vehicle;

comparing the respective said exiting vehicle identification information with the stored said entering vehicle identification information in said information management system for matching information whereby vehicle identification is confirmed;

permitting exiting vehicles with said matching information to exit; and

subjecting exiting vehicles without said matching information to a resolution process.

'435 Patent col. 12 ll. 1–33.  To summarize, the method (1) monitors a certain area, (2) identifies approaching vehicles and electronically notes unique identifying information from each vehicle, (3) gives entering vehicles a randomly coded ticket containing their unique information, (4) identifies exiting vehicles, (5) matches exiting vehicles' unique information with entering-vehicle information stored in its "information management system," (6) allows matching vehicles to exit, and (7) sends nonmatching vehicles through a "resolution process."  *See id.* Plaintiff alleges Defendant "provides, owns, operates, licenses, sells, or otherwise controls" facilities that infringe this patent claim.  Compl. ¶ 30.

2

In response, Defendant filed this Motion, arguing the case should be dismissed for failure to state a claim because the '435 Patent is directed to an unpatentable abstract idea.  Mot. 1. Defendant has also filed counterclaims, asking the Court to issue a declaratory judgment that Defendant "has not infringed and does not infringe any claim of the '435 Patent under any theory" and the '435 Patent is an ineligible patent.  *See* Answer, Affirmative Defenses, and Countercls. to Pl.'s 1st Am. Compl. ("Answer") 11–12, ECF No. 12.

## II.    DISCUSSION

### A.    Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, "the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).[1]  Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Generally, "Federal Circuit law applies to causes of action within the exclusive jurisdiction of the Federal Circuit," which includes patent infringement claims.  *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1368 (Fed. Cir. 2002) (collecting cases).  But even in cases within the Federal Circuit's purview, the law of the regional circuit in which the district court presides applies to "purely procedural question[s]," including the Rule 12(b)(6) pleading standards.  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007).  Accordingly, the Court looks to Federal Circuit precedent for the underlying substantive law but looks to Fifth Circuit precedent for its Rule 12(b)(6) standards.  *See id.*

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *Colony Ins. Co.*, 647 F.3d at 252.  Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).  Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.    Analysis

The Motion advances two arguments.  Defendant first argues Claim 8 is representative of all twenty claims in the '435 Patent.  *See* Mot. to Dismiss 5–7.  Defendant then argues that the '435 Patent is ineligible because it is "directed to the abstract idea of monitoring and controlling vehicle access," *id.* at 5, 7–12, and it contains no inventive concepts transforming the abstract idea into a patentable subject, *id.* at 5, 12–14.  In response, Plaintiff argues Claim 8 is not representative of other claims in the patent, highlighting Claim 11 as markedly different from Claim 8.  Resp. 13–15, ECF No. 14.  And Plaintiff counters Defendant's ineligibility argument by pointing to the Complaint's many allegations that the methods outlined in the '435 Patent were patentable because they were "unconventional" when the patent was filed in 2005.  Resp. 1–8.  Plaintiff also argues the '435 Patent is not directed to an abstract idea, Resp. 7–12, and that, regardless, it incorporates "inventive concepts sufficient to transform the nature of the claims beyond" an abstract idea.  Resp. 12–13.

4

### 1.     Claim 8 is representative of all claims in the '435 Patent.

Defendant argues Claim 8 is representative of all other claims because each independent claim in the patent—Claim 1, Claim 8, and Claim 15—is "directed to the same abstract idea of monitoring and controlling vehicle access."  Mot. 5; *see also id.* Ex. 1, ECF No. 10-1 (charting minor differences between the three independent claims).  Defendant further argues the remaining seventeen dependent claims only recite generic "post-solution limitations or elements" that do not require an individualized eligibility analysis.  Mot. 6–7 (discussing each dependent claim).  In response, Plaintiff argues Claim 8 is not representative of all claims but does not specify how it differs from the other two independent claims. *See generally* Resp. 13–15. Plaintiff does argue, however, that Claim 11—one of the dependent claims—patents an "unconventional application of departure times into [Claim 8's] authorization routine" and thus is dissimilar from Claim 8.  Resp. 13–14.

All claims in a patent, both independent and dependent, are presumptively valid regardless of "the validity of other claims."  35 U.S.C. § 282.  But when multiple claims "are 'substantially similar and linked to the same abstract idea,'" courts can resolve challenges to all claims by analyzing a single, representative claim.  *PPS Data, LLC v. Jack Henry & Assocs.*, No. 18-CV-00007, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (quoting *Perdiemco, LLC v. Industrack LLC*, No. 15-cv-1216, 2016 WL 5719697, at *7 (E.D. Tex. Sept. 21, 2016)); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank*, No. 12–2501, 2013 WL 3964909, at *5 (D.N.J. July 31, 2013) (citations omitted) (collecting cases).  The burden of demonstrating that a single claim is representative falls on the movant.  *PPS Data*, 2019 WL 1317286, at *5 (citations omitted).

Defendant has shown that Claim 8 is representative of the other independent claims. Claim 1 and Claim 8 are almost identical.  *See* Mot. Ex. 1, at 1–3.  And though Claim 8 and Claim 15 display minor grammatical differences, they are substantively similar and are focused on the same abstract idea of controlling vehicle access to a secure area.  The only notable difference between Claims 8 and 15 is that Claim 15's method allows for comparison of an exiting vehicle's information with information from the entry ticket generated when the vehicle entered.  *See id.* at 3; *see also* '435 Patent col. 13 ll. 33–37, col. 14 ll. 1–7.  Claim 8 similarly allows for comparison of exiting vehicles' information with entering vehicles' information but does not specify that it will make such comparisons by using the entry ticket.  *See* '435 Patent col. 12 ll. 24–28.  This single difference does not overcome the many similarities between Claims 8 and 15—both are linked to the same core concept of controlling how vehicles access a secure area.  *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1311 (Fed. Cir. 2019) (analyzing two independent claims together because, despite minor differences, they were each "essentially the same").  Defendant has shown both claims are substantially similar and are "linked to the same abstract idea."  *PPS Data*, 2019 WL 1317286, at *5.  Therefore, Claim 8 is representative of the other two independent claims.

This leaves Plaintiff's argument that Claim 8 is unrepresentative of Claim 11 because Claim 11 adds an "unconventional application of departure times into the authorization routine." Resp. 14.  This argument is unavailing because Claim 11 is substantively tied to Claim 8.  Claim 11 states:

> The method of claim **8**, said entering vehicle identification information comprising a planned departure schedule for exiting said region, said comparing said exiting vehicle identification information with said entering vehicle identification information comprising comparing an actual departure time with the

planned departure schedule wherein a discrepancy is reported to said information management system.

'435 Patent 12:57–63.  Claim 11's language reveals that the claim's validity is logically dependent upon Claim 8's validity.  If Claim 8 is found invalid, Claim 11 would also be invalid because it simply layers another feature—the incorporation of scheduled departure times into the process—onto Claim 8's method.  Furthermore, Claim 11's core function—comparing scheduled arrival times with actual arrival times—is plainly an abstract idea that does not merit separate consideration.  Reply 7, ECF No. 16; *see Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348–49 (Fed. Cir. 2014) (finding dependent claims that add "additional steps" to an independent, representative claim must facially contain "inventive concepts" meriting an individualized eligibility analysis).  For these reasons, Claim 8 is representative of Claim 11.

Plaintiff has not made specific arguments that Claim 8 is unrepresentative of any of the remaining sixteen dependent claims.  *See generally* Resp.  And Defendant has shown the other dependent claims are similarly tied to the validity of the independent claims because they only layer features onto the methods described in the independent claims.  Mot. at 6–7.  Therefore, the Court finds Claim 8 is representative of the '435 Patent claims.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim . . . ." (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed Cir. 2016))).

### 2.    The '435 Patent's Eligibility

Defendant asserts the '435 Patent is invalid because it claims the abstract idea of monitoring and controlling vehicle access and does not contain any inventive ideas that

transform the abstract idea into a patentable idea.  Mot. 5.  The Patent Act broadly protects new inventions, 35 U.S.C. § 101, but it does not allow inventors to patent "basic tools of scientific and technological work" such as the "laws of nature, natural phenomena, and abstract ideas." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589–90 (2013) (quoting *Mayo Collab. Servs. v. Prometheus Lab'ys Inc.*, 566 U.S. 66, 71 (2012)).  Courts use a two-step test to determine whether an invention's subject matter is patent-eligible.  *Cellspin*, 927 F.3d at 1314 (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014)).  First, courts consider "whether the claims at issue are directed" to a patent-ineligible concept, such as an abstract idea.  *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 77).  If patent claims are directed to an abstract concept, courts at step two search for an "inventive concept" that transforms "the claimed abstract idea into a patent-eligible application."  *Id.* at 221 (citing *Mayo*, 566 U.S. at 71, 79).

### a.    The '435 Patent is directed to the abstract idea of managing vehicle access to a secure area.

Defendant argues the '435 Patent is directed to the abstract idea of automating "the process of monitoring and controlling vehicle access," a process humans have long engaged in. Mot. 7–8.  Defendant further argues Claim 8's use of generic computer technology does not make it any less abstract.  Mot. 11.  Plaintiff responds that Claim 8 is not directed to an abstract idea, but rather, it provides a tangible "means for controlling a defined area by managing access points for entering and exiting vehicles utilizing individually obtained vehicle identification information and offering a security option."  Resp. 12–13.  Plaintiff also contends the patent's focus "is directed to non-abstract improvements in the functionality of computers," Resp. 9, because it improves vehicle-access systems by detecting authorized vehicles with "electronically obtained vehicle-specific data" rather than with a physical card or transponder.  Resp. 10.

8

The Supreme Court has emphasized that courts must cautiously analyze whether a patented idea is "abstract" because "too broad an interpretation of this exclusionary principle could eviscerate patent law." *Mayo*, 566 U.S. at 71. However, the Supreme Court has also frequently found that patents directed to a "method of organizing human activity" are abstract. *See, e.g.*, *Alice*, 573 U.S. at 219–20 (finding abstract a method that used a computerized process as "a third party to mitigate settlement risk"). The automation of such a method of organizing human activity "does not bring [its] claims out of the realm of abstractness." *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022) (citing *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017)); *see also Alice*, 573 U.S. at 222–23 (limiting abstract patent claims "to a particular technological environment" does not render them non-abstract (citing *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010))).

For example, in *Weisner* the Federal Circuit found a device that digitally recorded a person's daily, physical activities using generic computer components was directed to the abstract idea of "creating a digital travel log." 51 F.4th at 1075, 1082–83. The court found this was an abstract method of organizing human activity because humans have long "kept records of a person's location and travel in the form of travel logs, diaries, journals, and calendars." *Id*. Although the device used technology to effectuate the method, the patent claims were focused on the "core idea of creating a digital travel log." *Id*. at 1083. In numerous other cases, the Federal Circuit has found patents to be abstract when they merely automate a method of organizing human activity. *See, e.g.*, *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325–27 (Fed. Cir. 2017) (finding a patent for using an electronic index system to locate information in a computer database was merely using generic technology to implement the abstract idea of "creating an index and using that index to search for and retrieve data"); *In re TLI Comms. LLC*

*Pat. Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016) (finding an apparatus that recorded digital images, transferred the images to a storage device, and administered the images within the storage device was using generic technology to implement "the abstract idea of classifying and storing digital images in an organized manner"); *Content Extraction & Transmission*, 776 F.3d at 1345, 1347 (finding a device that extracted data from documents using a scanner, identified certain information in the data, and electronically stored that information was using generic technology to implement the abstract "concept of data collection, recognition, and storage").

Here, Claim 8 uses generic technology to implement an abstract method of managing vehicle access to a secure area. Claim 8 outlines seven distinct steps for its method: (1) monitor points of access to an area to detect vehicles; (2) electronically obtain at least one unique, distinguishing characteristic from entering vehicles and store that characteristic "in an information management system"; (3) offer entering vehicles a "security option" by providing a ticket (numbered with a random code) containing the entering vehicles' unique information to "an agent" of those vehicles; (4) obtain a unique, distinguishing characteristic from exiting vehicles; (5) match exiting vehicles' information with entering-vehicle information stored in the information management system to confirm the identify of exiting vehicles; (6) permit exiting vehicles with matching information to exit; and (7) subject exiting vehicles whose information does not match to a "resolution process." '435 Patent col. 12 ll. 1–33. On its face, Claim 8 sets forth a system for managing vehicle access to secured parking areas. As Defendant argues, it has "long been routine" for valets or parking attendants to control vehicle access to restricted areas, and valets commonly "record a license plate number or other vehicle characteristics" and provide the owner with a ticket. Mot. 7–8. Claim 8's seven-step process for doing the same can easily "be performed in the human mind" or by "using a pencil and paper." *PersonalWeb Techs. LLC*

*v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (quoting *CyberSource Corp. v. Retail*

*Decisions, Inc.*, 654 F.3d 1366, 1371–72 (Fed. Cir. 2011)).  It is not a tangible, non-abstract

system for managing access to a secured parking area—it is a quintessential abstract "method of

organizing human activity."  *Alice*, 573 U.S. at 219–20.

Plaintiff attempts to counter this conclusion by arguing that the "'electronically readable'

aspect of the [patent claims] is plainly one in which a computer is implicated and required," and

therefore the focus of the patent is "directed to non-abstract improvements to the functionality of

a computer or network platform."  Resp. 9.  The patent, however, does not specify *any*

technological inventions or improvements; it relies upon generic technology.  *See generally* '435

Patent.  For instance, the specification twice states "that there may be variations in the

information sensing devices, the computer or system components related to capturing, storing,

searching and/or retrieving data/information from files or storage . . . and making comparisons

and matching or confirmations of a vehicle with stored data."  *Id.* col. 2 ll. 64–67; col. 3 ll. 1–2;

col. 4 ll. 26–31.  Consistent with this broad disclaimer, the patent repeatedly describes relevant

technology in generic terms.  It states the "information management system" might take "the

form of a computer and/or processor or a similarly functional system of components."  *Id.*

col. 5 ll. 55–59.  Similarly, it generically describes the technology necessary to identify vehicles'

"unique repeatable distinguishing characteristic[s]" as "camera(s), sensor(s) or other forms of

detection and recordation device(s)."  *Id.* col. 5 ll. 44–47.  And it describes its "Onboard

Identity" system—an optional system allowing vehicles to be identified using manufacturer-

installed tags rather than with vehicle-specific characteristics—as being implemented through "a

broad variety of forms such as an infrared light energy pattern, a detectable barcode tag readable

from outside the vehicle, or a coded frequency and signal transmitter . . . detected by the entry and exit systems." *Id.* col. 7 ll. 10–16.

In sum, the '435 Patent does not claim a particular apparatus that makes an "improvement in computer capabilities or network functionality," but instead only claims a "desirable result or function" produced by generic uses of technology. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed Cir. 2020) (citations omitted); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (allowing technological claims to be characterized as non-abstract and survive step one if they are "directed to improvements in computer-related technology"). The '435 Patent's use of generic technology does not undercut its focus on the abstract idea of managing vehicle access to a secure area. *See Weisner*, 51 F.4th at 1082–83. The Court thus proceeds to step two.

> **b.      The '435 Patent does not employ inventive concepts to implement the abstract idea of managing vehicle access to secure areas.**

Defendant asserts that because Claim 8 merely applies "the abstract idea of monitoring and controlling vehicle access using conventional and well-understood techniques," it does not contain "an 'inventive concept sufficient to transform the claimed abstract idea into a patent eligible application.'" Mot. 12 (quoting *Alice*, 578 U.S. at 221). In response, Plaintiff asserts the '435 Patent captures "inventive concepts sufficient to transform the nature of the claims beyond the mere practice" of an abstract idea. Resp. 12. One such inventive concept Plaintiff highlights is "the creation of a unique random code and the association of that code with the entering vehicle identification information." Resp. 12.

Additionally, throughout its Response, Plaintiff points to allegations in the Complaint that the '435 Patent's use of Automatic Number Plate Recognition ("ANPR") technology was

unconventional at the time of patent application in 2005.  *See, e.g.*, Resp. 2–3 ("Moreover, the

fact . . . that the technological adoption of ANPR technology by the industry did not occur until

*seven years* after the date of invention establishes unequivocally that the [patent claims] recite

unconventional solutions."); *see also* Compl. ¶ 20 (stating that "as of the Date of Invention, there

were no 'presently operating systems which carry out the functions and provide for the many

features and advantages of'" the '435 Patent (quoting '435 Patent col. 2 ll. 3–7)).  And Plaintiff

argues the '435 Patent made various improvements on the state of the art in 2005, including

"greater revenues and decreased overhead expenditures by facility owners," "greater access

control and personnel safety," "more efficient roadway and parking facility entrance and exit

conditions," "greater public trust in the entities controlling toll roadways and parking areas," and

reduced "instances of human error in data reading and/or data entry activities."  Compl. ¶ 21;

Resp. 4–7.

     At step two, courts "consider the elements of each claim both individually and 'as an

ordered combination' to determine whether the additional elements 'transform the nature of the

claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–

79)).  "These transformative elements must supply an 'inventive concept' that ensures the patent

amounts to 'significantly more than a patent upon the [ineligible concept] itself.'"  *BSG Tech*

*LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1289–90 (Fed. Cir. 2018) (alteration in original)

(quoting *Alice*, 573 U.S. at 217–18).  An inventive concept must involve "more than the

application of an abstract idea using 'well-understood, routine, and conventional activities

previously known to the industry.'"  *Cellspin*, 927 F.3d at 1316 (quoting *Aatrix Soft., Inc. v.*

*Green Shades Soft., Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)).  As was true at step one, the use

of generic or conventional technology to apply an abstract idea does not transform that abstract

idea into an "inventive concept"—it does not suffice to state "an abstract idea while adding the words 'apply it with a computer.'"  *Alice*, 573 U.S. at 223.

Claim 8 does not contain a non-abstract, inventive concept.  It relies on generic, conventional technologies to apply the abstract method of managing vehicle access to a secure area.  As described above, the '435 Patent does not claim new technologies that could be used to better manage vehicle access to parking areas but rather relies on generic technology.  *See, e.g.*, '435 Patent col. 2 ll. 64–67 (acknowledging that various technologies may be used to implement the '435 Patent's methods).  Claim 8 exemplifies the patent's reliance on generic technology:  It states that "electronically readable" information will be obtained from entering vehicles, *id.* col. 12 ll. 6–7, and that a randomized code will be associated with entering-vehicle information in the "information management system," *id.* col. 12 ll. 12–14.  Claim 8 never specifies which inventive technologies must be used but rather assumes the existence of generic technology—cameras, computers, and sensors—with which its methods can be performed.  As a result, the '435 Patent merely states the "abstract idea [of managing vehicle access to a secure area] while adding the words 'apply it with a computer [and camera].'"  *See Alice*, 573 U.S. at 223.

Plaintiff urges that the Complaint plausibly establishes that the '435 Patent contains an inventive concept because, at the time of application in 2005, the patent used ANPR technology in a way that would be unconventional until 2012.  *See* Resp. 1–7.  But this argument is contradicted by the patent itself, which never purports to use ANPR technology.  *See generally* '435 Patent.  The patent only claims it will electronically obtain unique characteristics from entering and exiting vehicles—it never specifies technology with which such a feat could be accomplished.  *See* '435 Patent col. 5 ll. 44–47; Reply 2–3 (noting the '435 Patent never mentions ANPR technology).  Similarly, the patent never specifies how it will generate a random

14

code and associate that code with entering vehicles—it assumes the existence of technology that can be used for this purpose.  *See* '435 Patent col. 12 ll. 12–16.

These generic technological claims stand in stark contrast to *Cellspin*, where the court found the plaintiff had stated a claim for § 101 eligibility because the complaint "explained how [the] invention was implemented using an unconventional hardware and software structure with novel data transmittance that improved upon the prior art."  *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) (citing *Cellspin*, 927 F.3d at 1316–17).  The *Cellspin* court also acknowledged that a patentee's "allegation[s] of inventiveness, wholly divorced from the claims or the specification," cannot defeat a motion to dismiss.  927 F.3d at 1317.  Although Plaintiff alleges the '435 Patent's use of license-plate readers was unconventional in 2005, this argument is divorced from the patent itself, which only purports to use conventional technology (e.g., license-plate readers) for *ordinary* purposes (e.g., reading license plates) to manage vehicle access to secured parking areas.  This use of generic, conventional technology to administer a method of organizing human activity is an inherently abstract idea.  *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1366–67 (Fed. Cir. 2023) ("We have 'ruled many times' that 'invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea.'" (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018))); *Int'l Bus. Machs. Corp.*, 50 F.4th at 1379 ("[C]laims to 'an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way' do not suffice at step two." (quoting *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed Cir. 2016)); *BSG Tech LLC*, 899 F.3d at 1290–91 ("If a claim's only 'inventive concept' is the application of

an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." (citations omitted)).

Assuming arguendo that Plaintiff's unconventionality argument was not belied by the text of the patent itself, this argument fundamentally confuses the patent requirement of novelty, 35 U.S.C. § 102, with § 101's prohibition against patenting abstract ideas.  An idea may be novel under § 102(a) yet still be unpatentable under § 101 because it is abstract.  *See SAP Am.*, 898 F.3d at 1163 ("We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." (quoting *Ass'n for Molecular Pathology*, 569 U.S. at 591)); *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 748 (D. Del. 2018) ("The Supreme Court has made this point clear, holding that an abstract idea may be new, but nonetheless unpatentable under [§ 101]." (citations omitted)).  Taking as true Plaintiff's allegations that the '435 Patent's use of generic license-plate-reader technology to administer vehicle access to secured parking structures was a novel idea in 2005, the patent nevertheless does not claim any independent, inventive concepts transforming the abstract idea into a patentable method.  *See Alice*, 573 U.S. at 222–23.  Therefore, the '435 Patent's claims are ineligible under § 101.

## III.   DEFENDANT'S COUNTERCLAIMS

Defendant asserts two counterclaims against Plaintiff, asking for (1) a declaration that Defendant did not infringe any claims of the '435 Patent," Answer 10–11, and (2) a declaration that all claims in the '435 Patent are invalid, Answer 11–12.  Because the '435 Patent is ineligible under § 101, Defendant could not have infringed the patent's claims.  *See Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) ("The claim being invalid there is nothing to be infringed.").  Therefore, the Court dismisses both counterclaims as moot.  *See*

*Content Extraction & Transmission*, 776 F.3d at 1351 (declining to consider "a declaratory judgment of noninfringement and invalidity" when affirming a district court's dismissal of a patent suit for § 101 ineligibility).

## IV.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 10, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's counterclaims seeking a declaratory judgment, ECF No. 12, are **DISMISSED** as moot.

**SO ORDERED.**

SIGNED this 11th day of October, 2023.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE